UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

LIA TIEU,                                           Civil Case No.: 1:21-CV-05951-AT

                          Plaintiff,

         v.

NEW YORK CITY ECONOMIC DEVELOPMENT
CORPORATION, WINTHROP HOYT, and
RACHEL LOEB, in their individual and professional
capacities,

                          Defendants.

**----------------------------------------------------------------- X**


## **DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**


**GORDON & REES LLP**
One Battery Park, 28th Floor
New York, New York
Telephone: (212) 269-5500
Facsimile: (212) 269-5505

*Attorneys for Defendants*

<u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ............................................................................................... 1

I.     THE COURT SHOULD DECLINE TO CONSIDER PLAINTIFF'S
IMPROPER RULE 56.1 STATEMENT OF DISPUTED FACTS AND
SUPPLEMENTAL DECLARATION OR, ALTERNATIVELY,
GRANT DEFENDANTS PERMISSION TO FILE A RESPONSE ..................................... 2

II.    TIEU'S FMLA INTERFERENCE AND RETALIATION CLAIMS FAIL
AS A MATTER OF LAW. .............................................................................................. 3

    A.   Interference Claim ............................................................................................... 3

    B.   Retaliation Claim ................................................................................................. 7

III.   TIEU'S GENDER, RACE, AND PREGNANCY DISCRIMINATION
CLAIMS UNDER TITLE VII FAIL AS A MATTER OF LAW. ....................................... 10

IV.   TIEU'S DISABILITY DISCRIMINATION CLAIM UNDER THE ADA
FAILS AS A MATTER OF LAW. ................................................................................... 14

V.    TIEU'S RACE DISCRIMINATION CLAIM UNDER SECTION 1981 FAILS
AS A MATTER OF LAW. .............................................................................................. 15

VI.   TIEU'S RETALIATION CLAIMS UNDER TITLE VII, THE ADA, AND
SECTION 1981 FAIL AS A MATTER OF LAW. ............................................................ 16

VII.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION
UNDER THE NYSHRL AND THE NYCHRL. ............................................................... 16

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Adams v. N.Y. State Educ. Dep't,*
    752 F. Supp. 2d 420 (S.D.N.Y. 2010)..............................................................................15, 16

*Herron v. New York City Transit,*
    No. 15 CIV. 4842(EK)(CLP), 2022 WL 1017662 (E.D.N.Y. Apr. 5, 2022)...........................4

*Koppar v. Orange Reg'l Med. Ctr.,*
    No. 19 CIV. 11288 (KMK), 2022 WL 348172 (S.D.N.Y. Feb. 3, 2022), 2023
    WL 2484650 (2d Cir. Mar. 14, 2023) ....................................................................................10

*Logan v. Saks & Co., LLC,*
    No. 18 CIV. 9023 (AT), 2020 WL 5768322 (S.D.N.Y. Sept. 28, 2020)
    (Torres, J.)................................................................................................................................5

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ……………………………………………………....................16

*Mitchell v. N. Westchester Hosp.,*
    171 F. Supp. 2d 274 (S.D.N.Y. 2001)...................................................................................13

*Paul v. Postgraduate Ctr. for Mental Health,*
    97 F. Supp. 3d 141 (E.D.N.Y. 2015) .......................................................................................5

*Postell v. Fallsburg Library,*
    20-cv-3991 (NSR), 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022) ..........................................15

*Santiago v. Dep't of Transp.,*
    50 F. Supp. 3d 136 (D. Conn. 2014).......................................................................................5

**Statutes**

29 U.S.C. 2614(a)(1)(A)-(B) ........................................................................................................6

ADA...................................................................................................................7, 14, 15, 16

FMLA ............................................................................................................................. *passim*

**Regulations**

29 C.F.R. § 825-215........................................................................................................................6

29 C.F.R. § 825.300(b)(1)..............................................................................................................4

Fed. R. Civ. P. 56(c) ................................................................................................14

Fed. R. Civ. P. 56(c)(4) ............................................................................................14

Local Rule 56.1 ...............................................................................................2, 3, 13

Local Rule 56.1(b) ......................................................................................................2

Local Rule 56.1(d) ....................................................................................................14

**Other Authorities**

Rule III.C.iii of Judge Torres' Individual Practices........................................................2

## PRELIMINARY STATEMENT

Nothing contained in Plaintiff's opposition papers demonstrates any dispute of material facts requiring a trial. Plaintiff's Memorandum of Law attempts to obfuscate the issues and record to create the (false) impression of a triable issue of fact. Plaintiff's Response to Defendants' 56.1 Statement and her Memorandum of Law are also replete with mischaracterizations of evidence, purported "disputes" where no dispute in the evidence is actually present, and recitation of new facts that constitute inadmissible hearsay.

For example, Plaintiff manufactures a "dispute" over the legitimacy of the criticism in her performance reviews by noting that she received positive feedback from other sources, when there is no actual dispute that Plaintiff received both criticism and positive feedback. Plaintiff also misquotes or mischaracterizes neutral comments in the record to imply that those comments were about protected categories or activities. Additionally, Plaintiff relies on Asian female stereotypes that were *never even expressed* to her in the workplace, and attempts to use inadmissible hearsay statements regarding other Asian women's purported job dissatisfaction. Once Plaintiff's fabricated disputes, mischaracterizations, and inadmissible evidence are properly cast aside, Plaintiff cannot point to anything other than her own speculation that the complained-of actions were motivated by protected categories or a desire to retaliate against her.

In an effort to salvage her claims, Plaintiff accuses EDC of conducting a "sham" investigation into her 2019 discrimination complaint. While Plaintiff may disagree with EDC's decisions on how to conduct its investigation or try to fault EDC for any inconsequential mistakes, the law does not require an employer to conduct a perfect investigation or in the manner of a plaintiff's choosing. Moreover, courts are cautioned against "questioning the manner in which [an employer] conducts its internal investigations." In any event, any issues Plaintiff has with EDC's

1

investigation do not support a finding of discrimination or retaliation.

Finally, Plaintiff fails to oppose Defendants' arguments in support of dismissal of her disability discrimination claim for failure to accommodate, and has, thus, abandoned that claim. That is unsurprising, as the undisputed record confirms that, time and again, Defendants provided Plaintiff with reasonable accommodations (including extensive leave) for her disabilities.

## I.   THE COURT SHOULD DECLINE TO CONSIDER PLAINTIFF'S IMPROPER RULE 56.1 STATEMENT OF DISPUTED FACTS AND SUPPLEMENTAL DECLARATION OR, ALTERNATIVELY, GRANT DEFENDANTS PERMISSION TO FILE A RESPONSE.

As an initial matter, the Court should decline to consider Plaintiff's Rule 56.1 Statement of Disputed Facts (ECF Doc. No. 85, "Plaintiff's 56.1 Statement") and Plaintiff's Supplemental Declaration (ECF Doc. No. 88), both dated April 14, 2023, because those submissions are in clear violation of the Court's Local Rules and the Honorable Analisa Torres' Individual Practices.

Local Rule 56.1(b) provides, "The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement [of material facts] of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Accordingly, Plaintiff is not permitted to submit a *separate* Rule 56.1 statement of disputed facts; rather, Plaintiff was required to include any disputed facts in her response to Defendants' Rule 56.1 statement of material facts. For this reason alone, the Court should disregard Plaintiff's 56.1 Statement.

Further, Rule III.C.iii of Judge Torres' Individual Practices provides that, "the prospective movant [on summary judgment] shall email a pre-motion letter to chambers informing the Court of the basis for its anticipated motion for summary judgment and attaching the opposing party's

response to the Rule 56.1 Statement."[1] Thus, Plaintiff violated Judge Torres' Individual Practices by failing to provide her complete response to Defendants' Rule 56.1 Statement, including any additional facts she contends are material and disputed, prior to Defendants' submission of their pre-motion letter. In short, Plaintiff's 56.1 Statement should be precluded for not complying with the Court's Local Rules and Judge Torres' Individual Practices, and also because Plaintiff failed to seek leave from the Court to deviate from the aforementioned rules.

Similarly, Plaintiff's Supplemental Declaration is improper and should be disregarded because Plaintiff was required to submit any such evidence with her response to Defendants' Rule 56.1 Statement. Notably, Plaintiff was aware of this requirement because on December 21, 2022, she submitted a declaration with her response to Defendants' Rule 56.1 Statement, and she provides no justification for only now asserting these additional factual statements in her new supplemental declaration.

Alternatively, should the Court wish to consider the new factual statements asserted in Plaintiff's Rule 56.1 Statement and Supplemental Declaration, Defendants request the Court grant them permission to file a response to those submissions before the Court rules on this motion.

## II.   TIEU'S FMLA INTERFERENCE AND RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

### A. Interference Claim

In their moving brief, Defendants established that Plaintiff's FMLA interference claim fails because Defendants never denied her FMLA leave. In opposition, Plaintiff concedes, as she must, that she was authorized to take FMLA leave, and did, in fact, take FMLA leave. Instead, Plaintiff argues that Hoyt "discouraged" her from taking leave because he refused to sign the FMLA form,

---

[1] On January 6, 2023, Defendants filed their pre-motion letter together with their Rule 56.1 Statement and Plaintiff's response to Defendants' Rule 56.1 Statement. *See* ECF Doc. Nos. 67 and 67-1.

stating that Tieu was "not eligible".[2] First, this argument fails because Hoyt's initial refusal to sign the form was due to an honest mistake about the *amount* of time Plaintiff was eligible to take – Hoyt never "discouraged" Plaintiff from taking leave. Even assuming *arguendo* that the record supported a finding that Hoyt did not sign the form in an effort to "discourage" Plaintiff from taking leave, Plaintiff does not dispute that Hoyt *did* sign the form five days after she presented the form to him, and several months before she was planning to go on FMLA leave. "Mere 'delay'. . . is not considered a ground for discouragement," but instead, is *at most* a "'technical violation' of an FMLA regulation." 29 C.F.R. § 825.300(b)(1). *Herron v. New York City Transit*, No. 15-CV-4842(EK)(CLP), 2022 WL 1017662, at \*10 (E.D.N.Y. Apr. 5, 2022) (citing *Smith v. Westchester County*, 769 F. Supp. 2d 448, 468 (S.D.N.Y. 2011) (four-and-a-half-month delay in responding to request for FMLA leave was "technical violation" and not "interference").

      In an effort to bolster her argument that Hoyt "discouraged" her from taking leave, Plaintiff falsely argues that Hoyt made "disparaging remarks about Tieu's leave". However, the record confirms that Hoyt's remarks were *entirely unrelated* to her leave. For example, Hoyt's comments that Tieu should take "ownership" of her work related to her efforts to get out of serving as a witness for a deposition relating to one of her assets because Plaintiff believed she did not have enough knowledge about the asset. (SOF ¶¶ 120-126; Ex. MM, DEF 000115-120; Ex. F, Tieu Dep. 186:15-23 ("[Hoyt] told me I was shirking my responsibilities, *he didn't want to go on the deposition,* he told me I had to do it, he told me to take ownership of my work")). Similarly, Plaintiff's messages to Lauren Wolf ("Wolf") and another colleague confirm that Hoyt's comments about Lippman doing Plaintiff a "favor" were in reference to (i) Plaintiff's "making

---

[2] While Plaintiff cites *Graziado* for the proposition that "interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave", *Graziado* does not actually make any reference to "discouragement", much less recognize "discouragement" as a violation of the FMLA. *Graziado*, 817 F.3d 415.

[Lippman] do [Plaintiff's] work" even though Lipmann "[did]n't work for [Plaintiff,]" and (ii) Plaintiff's responsibility to perform Plaintiff's duties while she was working (*i.e.*, before Plaintiff actually went out on leave). (SOF ¶¶ 177-179; Ex. TT, PL000269, PL001503-04; Ex. UU, PL000268).[3] Finally, the undisputed record shows that Hoyt's comment that he would "keep a list" of Plaintiff's "wrongdoings" was in response to Plaintiff's claim that Hoyt had not provided her written criticism prior to her 2019 performance review. (Ex. F, Tieu Dep. at 195:6-12).

In any event, the remarks by Hoyt would not dissuade a "similarly situated employee of ordinary resolve from attempting to exercise" FMLA rights. *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 144 (D. Conn. 2014). Indeed, "criticizing, even berating an employee's substantive job performance is not enough to assert a claim for interference under a discouragement theory." *Logan v. Saks & Co., LLC*, No. 18 CIV. 9023 (AT), 2020 WL 5768322, at *5 (S.D.N.Y. Sept. 28, 2020) (Torres, J.) (quoting *Hockenjos v. Metro. Transp. Auth.*, No. 14 Civ. 1679, 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016)). Plaintiff's cited case is inapposite, because in *Santiago*, the employee was threatened with termination for requesting leave, which the court "can constitute interference under a discouragement theory." *Id.* at 152. Here, Plaintiff does not contend that Hoyt (or anyone else) threatened her with termination for requesting FMLA leave.

Plaintiff next argues that even if Defendants did not interfere with her right to take leave, they subsequently denied her "restoration" rights by failing to restore her to the same or an

---

[3] Tieu's self-serving testimony that she complained to Wolf that Hoyt "claimed that I was bossing Sabrina [Lippman] around, and that he said I should be grateful that she's doing my work, that she's doing me a favor *while I'm on maternity leave*" (Ex. F, Tieu Dep. at 215:7-15) (emphasis added) is directly contradicted by Tieu's contemporaneous text messages to Wolf and another colleague. (SOF ¶¶ 177-179; Ex. TT, PL000269, PL001503-04; Ex. UU, PL000268). *See Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in . . . discord with the record evidence").

equivalent position.[4] Plaintiff's argument that she returned to a "different job" is disingenuous. Prior to taking FMLA leave, Plaintiff worked as a Vice President in Asset Management, reporting to Hoyt. Upon returning from leave, Plaintiff was restored to the exact same position – Vice President in Asset Management, reporting to Hoyt – albeit, *per her request*, on a reduced schedule. Plaintiff argues that when she returned, "She no longer supervised anyone", most of her "responsibilities" were removed, and she received a "lesser raise" (Pl. Opp. at 17). However, none of these arguments support a claim that Plaintiff was not restored to the same or an equivalent position. The undisputed evidence shows that Plaintiff had not supervised anyone for more than 7 months preceding her FMLA leave.[5]  Plaintiff also does not cite a single case to support her argument that her position was not "equivalent" based on having fewer projects when she returned from leave (which in any event, was largely attributable to *her* request for a reduced work schedule).[6] Finally, Plaintiff's "lesser raise", which was based on her annual review rating, does not amount to a denial of restoration rights.  Plaintiff concedes she *did* receive a raise, and, accordingly, was paid *more* when she returned to work from FMLA leave.

---

[4] The FMLA requires an employer to restore an employee returning from leave to the same position held by the employee when leave commenced, or to an equivalent position, *i.e.*, a "position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. 2614(a)(1)(A)-(B).

[5] Prior to taking leave in August 2019, Plaintiff had supervised only one employee (Jinquan Liang) during her tenure at EDC. Plaintiff had stopped supervising Liang (who was on Connelly's team) after, at her request, she transferred to Hoyt's team in October 2018. (SOF ¶ 258; Ex. F, Tieu Dep. at 115:24-117:4, 202:9-25; Ex. C, Hoyt Dep. at 187:4-14; Ex. TTT, DEF 000451).

[6] Notably, the FMLA "does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave." 29 C.F.R. § 825-215. Thus, EDC's reduction of Plaintiff's workload to accommodate her requested reduced 3-day schedule did not violate the FMLA's "equivalent position" requirement. Indeed, Plaintiff admitted in her deposition that even with fewer assignments, she "was actually working more like five days a week, I was working on my days off." (SOF ¶ 262; Ex. F, Tieu Dep. at 261:9-17).

**B. Retaliation Claim**

Defendants also established that Plaintiff's FMLA retaliation claim fails because she cannot demonstrate a causal connection between her request for FMLA leave on May 7, 2019, and the performance review Hoyt prepared two months later.[7]  Likewise, Plaintiff cannot demonstrate a causal connection between her conversation with Hoyt on July 24, 2019, and the 2019 performance review, which Hoyt prepared *before* that conversation took place.[8]

In opposition, Plaintiff erroneously argues that a causal connection can be inferred based upon Hoyt's comments. As demonstrated in Point II.A., *supra*, the record confirms that Hoyt's comments were entirely unrelated to her FMLA leave – indeed, they related solely to Plaintiff's resistance to performing her job responsibilities *prior* to going on leave. Plaintiff cannot try to manufacture a factual dispute over this issue by misrepresenting the context of these comments, when contemporaneous emails confirm that she did, in fact, instruct her coworker to "handle" an assignment for her (a month before she was scheduled to take leave), and attempted to avoid sitting for a deposition by claiming she did not have enough knowledge about her asset.

The remaining comment Plaintiff cites – Loeb's message to Hoyt on April 30, 2020, stating, "I know you got the news about Lia. . . I know this is not the outcome any of us wanted or expected" – referred to news that Plaintiff intended to file an EEOC Charge and/or lawsuit against

---

[7] Plaintiff argues she also opposed alleged FMLA violations in a February 20, 2020 attorney demand letter, and a June 3, 2020 EEOC charge, for which she claims Defendants subsequently retaliated against her. The attorney demand letter and EEOC charge primarily asserted claims of discrimination and retaliation for her internal complaint of discrimination in August 2019. Defendants' arguments for dismissal of Plaintiff's retaliation claims under Title VII, the ADA, and Section 1981 address those alleged subsequent acts of retaliation occurring after the July 2019 performance review. Those arguments apply equally to support dismissal of Plaintiff's FMLA retaliation claims.

[8] Plaintiff inaccurately contends that "the only proof" that Hoyt prepared her review before the July 23 conversation is "Hoyt's own self-serving testimony" and that Defendants "failed to produce . . . any document referencing the existence of such a draft." (Pl. Opp. at 22-23). In fact, Defendants produced a July 15, 2019 email from HR to Hoyt regarding the draft performance review. (SOF ¶ 152; Ex. RR, DEF 000131-132).

EDC. (Ex. A, Loeb Dep. at 159:11-161:11; Loeb Dep. Ex. 3). Plaintiff mischaracterizes this comment, too, arguing that it referred to her return from leave when nothing in the record suggests this interpretation, other than Plaintiff's speculation.

Further, Defendants established that Plaintiff cannot overcome the legitimate, nonretaliatory reasons that she received the "2" rating for "communications" in her 2019 performance review. Plaintiff does not dispute – and cannot dispute – that she called her coworkers "motherfuckers," "lazy asses" and "illiterate"; that she threatened to quit or have her coworkers fired; and that EDC received several complaints from external stakeholders, and an outside consultant, about Plaintiff's communications. Instead, Plaintiff argues that these reasons are pretext for retaliation because Hoyt had not previously criticized her communications, and Wolf had provided positive feedback for Tieu's performance review.[9]

Plaintiff's arguments fail to demonstrate pretext. First, even if *Hoyt* had never conveyed criticism to Plaintiff regarding her communications prior to the performance review, the undisputed record shows that on two occasions, Matthew Kwatinetz, Hoyt's supervisor had counseled Plaintiff via email (and copied Hoyt) that she needed to improve her communications with the EDC consultant. (SOF ¶¶ 65-66; Ex. U, at PL000024-25). Additionally, it is undisputed that Hoyt and Kwatinetz had exchanged emails expressing concern over the external complaints received about Plaintiff's communication style, acknowledging that they needed to "deal with this

---

[9] In an attempt to bolster her claim that the 2019 and 2020 performance reviews were retaliatory, Plaintiff contends that Wolf was her supervisor and therefore should have been the one to prepare Plaintiff's performance reviews. However, the record is devoid of any evidence showing that Wolf was *actually* Plaintiff's direct supervisor. Indeed, (i) Wolf worked in a separate department, (ii) EDC's organizational chart identified Hoyt as Plaintiff's direct supervisor, and (iii) Plaintiff testified that Hoyt "was [her] boss." Ex. F, Tieu Dep. 187:4. Notably, Plaintiff does not point to a single example of a VP in Asset Management whose performance review was prepared by a manager in *another* department. In any event, Wolf's feedback was incorporated into Plaintiff's 2019 and 2020 performance reviews.

formally". (SOF ¶ 63; Ex. T, at DEF000112). These communication issues were also documented in a 90-day review prepared by Hoyt in February 2019.[10] Given that the concerns about Plaintiff's communications were documented before Plaintiff ever requested FMLA leave, Plaintiff cannot seriously argue that the criticisms about her communications in her performance review were a pretext for retaliation.

Likewise, the fact that Wolf provided positive feedback about Plaintiff's performance does not demonstrate pretext. Indeed, Wolf's feedback was incorporated into Plaintiff's 2019 performance review. (SOF ¶ 157; Ex. QQ, DEF 00176-178).   Moreover, Wolf's positive experiences working with Plaintiff do not negate the complaints EDC received about Plaintiff or communications issues that Hoyt observed.

Plaintiff next argues that retaliation is evidenced by the "flawed" manner of EDC's investigation into her 2019 complaint. As an initial matter, Plaintiff's mere disagreement with EDC's investigation does not render it "flawed." The undisputed record shows that EDC undertook a prompt and impartial investigation into Plaintiff's complaint. EDC interviewed Plaintiff, Hoyt, and Kwatinetz. The investigators also reviewed documentation provided by Plaintiff, Hoyt, and Kwatinetz, as well as promotion records. At the conclusion of the investigation, the investigators prepared a written summary detailing their findings and determination. While Plaintiff faults EDC for not interviewing all of the individuals that she claims (in conclusory fashion) were "favorable" to her, nothing in the record indicates that those "witnesses" either observed any allegedly discriminatory comments or would refute that EDC had received complaints about Plaintiff's

---

[10] While Plaintiff disputes that she and Hoyt discussed the 90-day review in which Hoyt criticized Plaintiff's communications, this factual dispute is not material to Plaintiff's retaliation claim because Plaintiff does not dispute that Hoyt did prepare the 90-day review. In any event, even absent the 90-day review, Plaintiff's communications issues are documented elsewhere in the record in emails and text messages with, or concerning, Plaintiff.

communications.[11] In any event, "[i]t is not the Court's role to second-guess an employer's nondiscriminatory business decisions" or to "question the manner in which it conducts its internal investigations." *Koppar v. Orange Reg'l Med. Ctr.*, No. 19-CV-11288 (KMK), 2022 WL 348172, at *18 (S.D.N.Y. Feb. 3, 2022), *aff'd,* No. 22-398-CV, 2023 WL 2484650 (2d Cir. Mar. 14, 2023).

Plaintiff's reliance upon *Menaker v. Hofstra University* and *Doe v. Columbia University* is erroneous. In *Menaker* and *Doe*, the male plaintiffs alleged sex discrimination arising out of the universities' "irregular" handling of investigations into sexual misconduct complaints against them, which exhibited bias in favor of female accusers, and resulted in their discipline. By contrast, Plaintiff does not contend that EDC handled this investigation in a discriminatory manner, *i.e.*, differently than it handled investigations of complaints by individuals outside of Plaintiff's protected class(es). Additionally, any so-called "flaws" in EDC's investigation cannot serve as evidence that the 2019 performance review itself was discriminatory or retaliatory, because the performance review predated the investigation.[12]

## III.  TIEU'S GENDER, RACE, AND PREGNANCY DISCRIMINATION CLAIMS UNDER TITLE VII FAIL AS A MATTER OF LAW.

In their moving brief, Defendants demonstrated that Plaintiff's gender, race, and pregnancy discrimination claims under Title VII fail as a matter of law because Plaintiff could not demonstrate that she received a "2" rating in her 2019 performance review under circumstances

---

[11] Plaintiff's cited case, *Doe v. Columbia University*, is distinguishable because in *Doe*, the plaintiff's proffered witnesses had observed the plaintiff and his accuser on the night of the sexual encounter and could provide information regarding whether the encounter was consensual, which could have exonerated the plaintiff.  *Doe,* 831 F.3d at 49.   Here, there is no evidence that Plaintiff's witnesses observed the incidents in question.  *Doe* is also inapposite for the separate reasons discussed *infra*.

[12] Moreover, *Menaker* presented allegations that are not present here, including an allegation that the employee was terminated "despite the fact that [leadership] *knew* that at least one of the accusations against him was false" and that the university "completely disregarded the [investigation] process provided for in its written 'Harassment Policy.'" *Menaker,* 935 F. 3d at 34-35.

giving rise to an inference of discrimination. Specifically, Plaintiff cannot point to any similarly situated employees who were treated more favorably or point to any comments made by Defendants that might evidence a discriminatory animus.

As with her FMLA retaliation claim, Plaintiff seeks to rely upon her own blatant mischaracterization of her supervisor's comments made about her failure to take ownership of her work, her "shirking" her responsibilities, and her coworker doing her a "favor", as purported evidence of a discriminatory animus based upon pregnancy. For the reasons discussed in Point II.B., *supra*, Plaintiff's efforts to distort these comments are unavailing.

Plaintiff next attributes other adverse actions to pregnancy discrimination – namely, the "negative" 2020 performance review, and changes to her assignments upon her return from leave in 2020.[13] But Plaintiff fails to point to any discriminatory comments, let alone discriminatory comments made at or near the time she returned from leave in May 2020 or received the 2020 performance review in February 2021. The sole comment that Plaintiff cites is Loeb's remark about the "news" about Plaintiff's assertion of legal claims. As discussed in Point II.B., *supra*, Plaintiff mischaracterizes this comment in arguing that it referred to her return to work as a working mother when the comment does not reference Plaintiff's parental leave or return to work at all. Indeed, Plaintiff's argument is undermined by the fact that Loeb herself gave birth to two children while working and took leave. (SOF ¶ 190; Ex. A, Loeb Dep. at 21:24-23:4; 23:15-21).

Even if the aforementioned comments could give rise to a discriminatory animus based on pregnancy, Defendants have proffered legitimate, non-discriminatory reasons for Plaintiff's 2019 and 2020 review ratings, and the changes in Plaintiff's job assignments upon her return from leave. Plaintiff's arguments of pretext are unpersuasive. *First*, in response to Defendants' stated reasons

---

[13] Although Plaintiff cites the "diminished raise" and the "lost bonus" as adverse actions, she concedes that the raise and bonus were based solely upon her 2019 and 2020 performance review ratings, respectively.

for changing Plaintiff's assignments upon her return from leave –specifically, (i) Plaintiff's reduced 3-day workweek, (ii) her complaints about a heavy workload, and (iii) Lippman's retention of certain assets – Plaintiff utterly fails to point to any evidence of pretext.

*Second*, in response to the legitimate, nondiscriminatory reasons given for the feedback provided by Hoyt (for both the 2019 and 2020 review) and Loeb (for the 2020 review), Plaintiff's argument – that the feedback was "negative" despite Hoyt or Loeb "hardly working" with her – fails to demonstrate pretext.  Hoyt's feedback was based upon his weekly check-in meetings with Plaintiff and other interactions, and Loeb's feedback was based upon her own personal observations of Plaintiff during numerous meetings – although Plaintiff may consider this frequency of interaction as "hardly working" with her, there is no genuine dispute that these interactions occurred and that they formed the basis of Hoyt's and Loeb's feedback. (SOF ¶¶ 283, 319; Ex. C, Hoyt Dep. at 191:20-192:3; Ex. A, Loeb Dep. at 74:10-14, 134:2-20, 143:6-13). Notably, Hoyt and Loeb also provided positive feedback for Plaintiff, and Hoyt incorporated positive feedback from De Vito, Stein, and Wolf.  Had Plaintiff's performance reviews been motivated by discrimination, Hoyt would not have provided Plaintiff such a balanced review, nor would Loeb have provided positive feedback. Moreover, Hoyt and Loeb's feedback was echoed by constructive criticism from Stein and De Vito. In reality, Plaintiff merely disagrees with the constructive criticism in her performance review, but mere disagreement with a supervisor's assessment is not enough to demonstrate evidence of discrimination.

Plaintiff's arguments in support of her race and sex discrimination claims fare no better. Plaintiff argues that Hoyt treated her differently by criticizing her communications style in performance reviews,[14] and describing Plaintiff as "aggressive" and "bossing" around another

---

[14] Defendants note that in addition to the 2019 and 2020 performance reviews, Plaintiff's Memorandum of Law also argues that Plaintiff received a "discriminatory and retaliatory" performance review in Summer

employee. However, *none* of these comments reference Plaintiff's race or sex.   Further, the undisputed record shows that these comments were legitimate criticisms of Plaintiff's workplace conduct.  As discussed in Point II.B., *supra*, EDC had received several complaints about Plaintiff's communications from external partners. Hoyt's description of Plaintiff's tone as "aggressive" referred to the meeting in which she threatened to default Columbia over long-standing lease issues – which also prompted Columbia representatives to complain about Plaintiff. (SOF ¶¶ 43, 47; Ex. C, Hoyt Dep. at 139:4-14; Ex. Q, at DEF00003333). Likewise, his criticism that Plaintiff was "bossing" Lippman around was not pulled out of thin air, as Plaintiff had sent an email delegating an assignment to Lippman, who was not Plaintiff's subordinate, without permission.

Knowing there are no genuine disputes regarding these incidents, Plaintiff instead makes the unfounded accusation that Defendants have adopted a stereotype that Asian women should be "docile". However, Plaintiff points to no admissible evidence that any such stereotype existed at EDC, such as (i) any derogatory or stereotypical comments about Asian women that were made in the workplace, or (ii) any non-"Asian females" who engaged in similar conduct but were not similarly criticized as being "aggressive" or "bossy".[15] Rather, Plaintiff, through her improperly submitted Rule 56.1 Statement and Supplemental Declaration, both of which should be disregarded for reasons stated in Point I, *supra*, attempts to rely upon purported interactions between Hoyt and Connelly, respectively, and other Asian women. Even if the Court were to

---

2021. (Pl. Opp. at 11). However, "[b]ecause these claims were not contained in Plaintiff's [EEOC] charge, are not the subject of the EEOC right to sue letter, and are not pleaded in the complaint, this court has no power to adjudicate them." *Mitchell v. N. Westchester Hosp.*, 171 F. Supp. 2d 274, 277 (S.D.N.Y. 2001).

[15] The *Kwon* case is inapposite. There, the plaintiff proffered an expert to testify that "the phrase 'notorious slumlord' is a semantic move or coded language describing a person from a racial group who are commonly stereotyped as sneaky, stingy, greedy, etc." and that "the remark 'reflects a racial stereotype that successful Asians gain their success by exploiting innocent others out of greed.'" *Kwon*, 912 F. Supp. 2d at 144.  Here, Plaintiff has proffered no expert testimony concerning racial stereotypes. Moreover, unlike the term at issue in *Kwon*, comments that an employee is "aggressive" or "boss[y]" are too generic to evoke a stereotype.

consider these improper submissions, the statements regarding other Asian women's alleged experiences at EDC contained in Plaintiff's Supplemental Declaration are not made on personal knowledge, and constitute inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also* Local Rule 56.1(d) ("Each statement by the movant or opponent. . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)). Moreover, even if admissible, these statements about other Asian women would not demonstrate discriminatory animus. For example, claims that other Asian women asked to be transferred out of Connelly's team merely indicate, at most, that those women did not like Connelly's management style. Plaintiff herself testified that she requested to transfer out of Connelly's team because of his management style, calling him "uninvolved." (Ex. F, Tieu Dep. 105:15-106:21). Accordingly, other Asian women's requests to be transferred out of Connelly's team does not support a speculative finding that those employees were "mistreated", much less that such mistreatment were due to their race and sex.

Even if Plaintiff had proffered evidence in admissible form that other Asian women were mistreated *because of* their race and sex, as with her pregnancy discrimination claim, Plaintiff has failed to meet her burden to demonstrate that Defendants' legitimate, non-discriminatory reasons for her performance reviews (or any other alleged adverse employment action taken against Plaintiff) were pretext for race or sex discrimination.

## IV.   TIEU'S DISABILITY DISCRIMINATION CLAIM UNDER THE ADA FAILS AS A MATTER OF LAW.

Defendants' moving papers established that Plaintiff's ADA disability discrimination claim fails because Plaintiff cannot demonstrate she was denied a reasonable accommodation.

Plaintiff does not even bother to respond to these arguments, and, accordingly, her ADA disability discrimination claim should be deemed abandoned.[16] *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases in which courts deemed the plaintiff's claims abandoned for failure to address defendant's arguments). Plaintiff's failure to address this point only confirms how frivolous her failure-to-accommodate claim was. In fact, time and again, EDC granted Plaintiff numerous accommodations for disabilities. That Plaintiff would claim she was denied reasonable accommodations, despite clear evidence to the contrary, and then abjectly fail to respond to Defendants' arguments weakens the rest of her kitchen-sink approach.

## V.   TIEU'S RACE DISCRIMINATION CLAIM UNDER SECTION 1981 FAILS AS A MATTER OF LAW.

Defendants' moving papers also demonstrated that Plaintiff's Section 1981 claim cannot survive summary judgment because (i) she failed to plead that race discrimination was a "but-for" cause of her 2019 performance review (or any other adverse employment action), and (ii) her kitchen-sink approach precluded her from now arguing that race discrimination was a "but-for" cause of any adverse employment action. In opposition, Plaintiff fails to distinguish *Postell,* which held that plaintiff's allegations of discrimination on multiple protected categories precluded the court from concluding that race was a but-for cause of the alleged unlawful conduct.  Further, for the reasons set forth in Defendants' moving brief, and as discussed *supra*, even if Plaintiff could establish a *prima facie* claim under Section 1981, she cannot demonstrate by a preponderance of the evidence that her race was a but-for cause of her 2019 review or any other adverse action.

---

[16] In a footnote, Plaintiff contends that her disability discrimination claim is "logically intertwined" with her pregnancy and FMLA claims because she was "treated differently because of the combination of these traits." That argument is fatally flawed, as she fails to point to any evidence of circumstances from which to infer discriminatory animus based upon her disability, such as comments by decision-makers or more favorable treatment of similarly situated comparators.

## VI.   TIEU'S RETALIATION CLAIMS UNDER TITLE VII, THE ADA, AND SECTION 1981 FAIL AS A MATTER OF LAW.

Defendants' moving brief established that Plaintiff's retaliation claims under Title VII, the ADA, and Section 1981 also fail as a matter of law because (i) Plaintiff cannot establish a *prima facie* case that the complained-of actions were retaliatory, and (ii) even assuming *arguendo* that she could establish a *prima facie* case, in response to Defendants' legitimate nonretaliatory reasons for their actions, Plaintiff has not demonstrated that retaliation was a "but-for" cause of any of the complained-of actions.

In opposition, Plaintiff recites a laundry list of her protected activities but utterly fails to connect any of these protected activities to any particular adverse action. Instead, she merely argues that because of "timing, comments, pretext, and sham investigation" a jury "could easily conclude that Defendants retaliated against Tieu" for those protected activities. In other words, Plaintiff points to a host of protected activities and expects Defendants and the Court to carry the rest of her burden under the *McDonnell-Douglas* framework.  Plaintiff's strategy only confirms the meritless nature of her claims.

## VII.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION UNDER THE NYSHRL AND THE NYCHRL.

Finally, Defendants' moving brief demonstrated that because summary judgment is warranted on each of Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining State and City law claims. Plaintiff's opposition fails to address or even acknowledge this argument.  Accordingly, Plaintiff has conceded that, should the Court grant summary judgment on each of her federal claims, there is no basis to exercise supplemental jurisdiction and this action should be dismissed in its entirety. *See Adams,* 752 F. Supp. 2d at 452 n.32.

Dated:          New York, New York
                May 5, 2023

                                                       GORDON REES SCULLY MANSUKHANI,
                                                       LLP

                                                       By: /s/_____
                                                       Mercedes Colwin, Esq.
                                                       Kuuku Minnah-Donkoh, Esq.
                                                     Lindsey Blackwell, Esq.
                                                       One Battery Park Plaza, 28th Floor
                                                       New York, NY 10004
                                                       (212) 269-5500